**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**GORE, KILPATRICK & DAMBRINO, PLLC,**
a Mississippi Professional Limited Liability Company                    **PLAINTIFF**

**VERSUS**                                                    CAUSE NO. 4:24-cv-107-DMB-DAS

**SPINNAKER INSURANCE COMPANY, an Illinois Company;
COWBELL CYBER, INC., a Delaware Corporation;
COWBELL INSURANCE AGENCY LLC, a California Corporation; and
JOHN DOES I through X**                                                **DEFENDANTS**

**COMPLAINT**
Jury Trial Requested

COMES NOW Plaintiff Gore, Kilpatrick & Dambrino, PLLC, a Mississippi Professional Limited Liability Company (hereinafter referred to as "Insured" or "GKD"), by and through counsel, and files this its Complaint against the named Defendants, stating unto the Court as follows:

**PARTIES**

1. Gore, Kilpatrick & Dambrino, PLLC, ("Insured"), Plaintiff herein, is a Mississippi Professional Limited Liability Company organized and existing under and pursuant to the laws of the State of Mississippi, with its principal place of business located at 2000 Gateway Drive, Ste. 160, in the City of Grenada, Grenada County, Mississippi.

2. Defendant Spinnaker Insurance Company ("Spinnaker") is a for-profit corporation doing business in Mississippi, organized under and pursuant to the laws of the state of Illinois,

1

with its principal place of business located in a State other than Mississippi, and its office address being 233 S. Wacker Drive, Suite 5506, Chicago, IL 60606. Defendant Spinnaker issued a policy of Insurance to the Plaintiffs, a copy of which is attached hereto as Exhibit "A." Defendant Spinnaker may be served with process in the manner and time prescribed by law by service upon its duly appointed registered agent for service of process, Corporation Service Company, 109 Executive Dr., STE 3, Madison, MS 39110, or by the Mississippi Insurance Commissioner, for which let process issue forthwith.

3. Defendant Cowbell Cyber, Inc., ("Cowbell"), is a for-profit corporation registered with the Mississippi Secretary of State to do business in Mississippi, organized under and pursuant to the laws of the state of Delaware, with its home office business located in a State other than Mississippi and address being 38 E. 29th St., 10th Floor, New York, NY 10016, and its principal place of business being 6800 Koll Center Pkwe Ste 250, Pleasanton, CA. 94566. which may be served with process in the manner and time prescribed by law by service upon its duly appointed registered agent for service of process, Incorporated Services Ltd. 248 East Capitol Street, Suite 840, Jackson, MS 39201, for which let process issue forthwith.

4. Defendant Cowbell Insurance Agency LLC is licensed in the State of Mississippi Department of Insurence under license #15039439 as an Insurance Producer Entity. (Cowbell II) Cowbell II is a for-profit corporation licensed to do business in Mississippi, doing business in Mississippi, organized under and pursuant to the laws of the state of California, with its home office business and principal place of business located in a State other than Mississippi and address being 6800 Koll Center Pkwe Ste 250, Pleasanton, CA. 94566. Based upon information

and belief, Cowbell II may have been the underwriter of the policy of insurance in question. It may be served with process upon its agent for process, Jagannath Y. Kudale, 6800 Koll Center Pkwe Ste 250, Pleasanton, CA. 94566, or by the Mississippi Insurance Commissioner, for which let process issue forthwith.

5. Defendant Cowbell states to the Mississippi Secretary of State that they are in the business of Computer Systems Design Services. At all times, Defendant Cowbell was the joint venturer, co-conspirator and co-Principal for Defendant Spinnaker, and their own Department of Claims, through Cyber's Vice President of Claims, denied coverage to the Insured from the subject Policy of Insurance issued by Defendant Spinnaker. Such denial of the claim was without reasonable or legitimate arguable reason for denying Plaintiff's claim.

6. Defendants John Does I through X are unknown individuals or entities that may be liable to the Plaintiff under this Complaint.

## VENUE AND JURISDICTION

7. This Court has jurisdiction over the parties and subject matter of this litigation under and pursuant to 28 U.S.C. §1332, as complete diversity of citizenship exists between Plaintiff and Defendants and the amount sought in the Complaint exceeds the minimum jurisdiction amount for diversity; venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), in that a substantial part of the events and omissions giving rise to this claim occurred in and within this judicial district.

## FACTUAL ALLEGATIONS

8. A client of the Plaintiff, Regions Bank, required cyber threats insurance initially of 3,000,000.00 dollars. Later, the required amount was reduced to $1,000,000.00 in coveage. Because of this requirement, the Plaintiff sought cyber threats insurance from Defendant Cowbell. Defendant Cowbell assured the Plaintiff that they would provide such coverage and that they were a major supplier of such cyber threats coverage. An example of the material that Defendant Cowbell sent the insured is attached hereto as Exhibit B. As the document states "Get peace of mind with a Cowbell cuber insurance policy." As the document further states, Defendant Cowbell II is the underwriter of the policy of insurance issued by Prosource (Spinnaker) to the Plaintiff which were required to satisfy the requirement of cyber threats insurance.

9. On or about August 15, 2023, Defendant Spinnaker through Defendant Cowbell and Cowbell II issued Insurance Policy Number FLY-CB-VS39FNCN9-004 to Gore, Kilpatrick & Dambrino, PLLC (the "insured") with effective dates of August 15, 2023 through August 15, 2024. The Insured timely paid all premiums charged by Spinnaker for the coverage described in said Insurance Policy. A true and correct copy of said policy of insurance, together with the corresponding and incorporated declarations pages, is attached hereto, incorporated herein by reference for all purposes, and has already been marked as Exhibit "A to this Complaint.

10. The aforesaid policy was a policy of insurance to protect the Insured from cyber threats and loss caused by, *inter alia,* "social engineering". Said policy included a "Social Engineering Coverage Endorsement" wherein Spinnaker agreed to:

>…pay for **Social Engineering Loss** resulting directly from a **Social Engineering Incident,** provided such **Social Engineering Incident** that is first **Discovered** during the Policy Period and reported in accordance with Condition **14. Duties in the Event of Claim or Loss…**

11. Said policy defines "Social Engineering Incident" as follows:

c. **Social Engineering Incident** means the intentional misleading of an **Insured** to transfer **Money** to a person, place or account beyond the **Named Insured's** control resulting directly from the Named Insured's employee's good faith reliance upon an instruction transmitted via email, purporting to be from:

>I. a natural person or entity who exchanges, or is under contract to exchange, goods or services with the **Named Insured** for a fee (other than a financial institution, asset manager, broker-dealer, armored motor vehicle "named insured" or any similar entity); or

>ii. an employee of the **Named Insured**;

>but which contained a fraudulent and material misrepresentation and was sent by an imposter. As a condition precedent to coverage, the **Insured'**s established and documented verification procedure must have been followed before acting upon such instruction.

12. On or about May 23, 2024 (and within the policy period effective dates), an individual representing himself to be David Casteel (hereinafter " Imposter Casteel") contacted the Insured for the purpose of securing their services to collect a debt allegedly owed to Imposter Casteel's company, Brooks Machinery, Inc., by a Greenwood, Mississippi, based company, Mid-Delta Equipment LLC, in the amount of $158,850.00. The Imposter who identified himself as Casteel was not, in fact, David Casteel, and he did not represent Brooks Machinery, Inc. Brooks Machinery, Inc. was administratively dissolved on September 9, 2010. Therefore Brooks Machinery, Inc. was an entity that was also an imposter. There was no debt owed by Mid-Delta Equipment LLC to Brooks Machinery; this was a complete fabrication by the Imposter Casteel.

He gave numerous details as to how he came to locate the Insured by way of a local referral, the debt, and sought to retain the Insured to collect it.

13. On June 3, 2024, the Imposter Casteel informed the Insured that Mid-Delta had agreed to pay the debt and, in an elaborate scheme to defraud the Insured, described numerous details of why the debt was late and when the payment would be received by the Imposter Casteel. The Imposter Casteel referred to a conversation the Imposter Casteel had with Allen Flowers of Mid-Delta who was, in fact, the manager of the real Mid-Delta Equipment, LLC, in Greenwood, Mississippi.

14. On June 5, 2024, the Insured received correspondence dated May 30, 2024, allegedly from Mid-Delta Equipment, allegedly signed by Eddie A. Flowers (Allen Flowers) enclosing an Official Check drawn on Citibank in the amount of $158,850.00 in payment of the so-called debt to Brooks Machinery, Inc. Eddie A. Flowers was also an imposter as the real Eddie A. Flowers had no contact with Imposter Casteel or Imposter Brooks Machinery, Inc. This correspondence was, in fact, provided by the Imposter Casteel; the enclosed Official check was likewise a fabrication and provided by the Imposter Casteel, allegedly posing as imposter Eddie A. Flowers of Mid-Delta. A true copy of said May 30, 2024, letter is attached hereto and incorporated herein by reference for all purposes as Exhibit "C" to this Complaint. A true copy of the enclosed, false Official Check is attached hereto and incorporated herein by reference for all purposes and marked Exhibit "D" to this Complaint.

15. Upon receipt of the Official check, the Insured deposited same into its IOLTA/Escrow Account and, pursuant to its verification procedures, awaited confirmation from

6

its depository bank, Regions Bank, NA, that the check had cleared.

16. The Imposter Casteel by telephone advised the Insured to deduct its attorneys' fee from the amount deposited, and to wire the remaining balance to him in his false capacity as a representative of Brooks Machinery, Inc. The funds were to be wired to Imposter Brooks Machinery, Inc., to Bank of America, Beneficiary Name JH & N Venture, account number 383027173556, Beneficiary Address 145 S. Main Street, Milroy, PA 17036. See Exhibit "E" attached to this complaint. This was another imposter entity for Brooks Machinery, Inc., as Imposter Brooks Machinery, Inc. did not exist and had no bank account as 383027173556.

17. On Friday, June 7, 2024, Regions Bank, NA, advised that the check had, in fact cleared. On Friday, June 7, 2024, pursuant to wiring instructions provided by the Imposter, and pursuant to its own verification procedures and safeguards, the Insured wired the sum of $158,425.00 to the account specified by the Imposter Casteel.

18. On Monday, June 10, 2024, the Imposter Casteel confirmed receipt of the wired funds.

19. Subsequently on, Monday, June 10, 2024, the Official Check previously attached hereto as Exhibit D was returned unpaid. A true copy of said returned Official Check is attached hereto, incorporated herein by reference for all purposes and marked Exhibit F to this Complaint.

20. All written correspondence with the Imposter was via email. Jay Gore, III, and Mary McDaniel, both personally spoke with the Imposter Casteel via telephone on several occasions.

21. The Insured immediately deposited $158,850.00 into its IOLTA/Escrow Account

with Regions Bank to cover the shortfall caused by the dishonor of the Official Check.

22. On June 17, 2024, the Insured filed a claim under the subject insurance policy with Cowbell, the claims administrator for Spinnaker.

23. The Insured fully cooperated with Cowbell in the filing of this claim.

24. On August 19, 2024, Mamta Birla, who is the Director of Claims of the Claims Department for Cowbell Cyber, Inc. advised the Insured that the claim was being denied for lack of coverage. According to Birla, the letter provided in part:

> Cowbell Cyber, Inc. ("Cowbell") is the claims administrator handling claims on behalf of Spinnaker Insurance Company ("Spinnaker" or the "Insurer") arising under Prime 100 Cyber risk Insurance Policy No. FLY-CB-VS39FNCN9-003, effective August 15, 2023 - August 15, 2024 ("Policy") issued to Gore, Kilpatrick & Dambrino PLLC ("Insured"). As you are aware, I am the assigned adjuster handling this matter. Kindly address all future correspondence to me. The purpose of this letter is to advise you of our coverage position under the Policy.
>
> We appreciate Gore, Kilpatrick & Dambrino PLLC as a customer and are committed to working closely with you with regards to this matter. For the reasons set forth below, we advise that coverage is not afforded for this matter. We set forth below our understanding of this matter, as well as a detailed analysis of how we arrived at this decision. If you believe there are additional facts that could alter our analysis, please do not hesitate to provide such information to us for further consideration.

A true and correct copy of said denial letter is attached hereto, incorporated herein by reference for all purposes and marked Exhibit G to this Complaint.

25. After discussing various coverage provisions applicable to 'security breaches' or 'cyber incidents', Cowbell, through its Director of Claims Mamta Birla, turned its attention to the Social Engineering Coverage Endorsement quoted, *infra,* at paragraphs 6 and 7. Cowbell

concluded that the Insured did not suffer a Social Engineering Incident. The basis of this conclusion is found at page 7 of Exhibit G, wherein Cowbell states:

> "Based on the details provided, it is Spinnaker's position that there was no "fraudulent and material misrepresentation sent by an imposter" to intentionally mislead Insured as Mr. Casteel always had the intent to defraud the firm by obtaining the firm's funds through a fake Officialcheck. There was no "imposter" that intercepted the communications between Insured and Mr. Casteel that caused Insured to be misled by a fraudulent and material misrepresentation to transfer Mr. Casteel's funds to the imposter instead. Here, we understand that the Insured's investigation revealed that the entire engagement with Mr. Casteel was a scam which resulted in the Insured being defrauded of $158,425. Mr. Casteel created a fake scheme through which to misappropriate the Insured's funds. Thus, based on the details provided, there is no indication that the loss of funds is the result of a Social Engineering Incident, as defined under the Policy."

According to Mamta Birla, there was no imposter!

26. On September 18, 2024, the Insured responded to the claim denial letter. A true and correct copy of said response is attached hereto and incorporated herein by reference for all purposes and marked Exhibit H to this Complaint. The Insured disputed the denial of its claim and provided reasoned evidence of the error of Cowbell/Spinnaker's analysis of coverage.

27. On October 15, 2024, Spinnaker, through its 'coverage counsel' Gabriel E. Warwick of White and Williams, LLP, responded to the Insured by again stating that there was no insurance coverage. A true copy of said October 15, 2024, letter is attached hereto, incorporated herein by reference for all purposes, and marked Exhibit I to this Complaint. Therein, on page one (1) of Exhibit H, the lawyers spelled out five (5) 'requirements' in order to have coverage under the Social Engineering Coverage Endorsement:

    a.    The insured must have been intentionally misled;

    b.  by an instruction transmitted via e-mail;

    c.  purporting to be from a natural person or entity who exchanges, or is under contract to exchange, goods or services, with the insured for a fee;

    d.  which contained a fraudulent and material misrepresentation; and

    e.  was sent by an imposter

Unlike Mamta Birla, who concluded there was no imposter, Gabriel E. Warwick somehow concluded that David Casteel was an imposter. But Warwick further concluded, by some logic, that the Casteel the imposter and Casteel the real person were one and the same! For this reason, Warwick then determined that coverage was unavailable!

28. There was, in truth and in fact at one time, a "David Casteel" who was principal of a "Brooks Machinery, Inc." company in Georgia (the real David Casteel). The real David Casteel has never emailed Plaintiff, has never done business with Mid-Delta Equipment, and has no knowledge whatsoever of the fraudulent transaction described *infra*. All contacts were with imposters.

29. The Insured followed the Plaintiff's established verification procedures by sending the alleged Casteel a letter of engagement. The Imposter Casteel signed and returned the fee agreement on June 3, 2024. The Insured had knowledge of Mid-Delta as a going concern and, anecdotally, in financial distress, and agreed to undertake the collection for imposter Casteel/Brooks Machinery, Inc., for an agreed-upon hourly rate. The Insured deposited the check allegedly from the imposter Eddie A. Flowers on June 5, 2024. The Plaintiffs established verification procedure was again followed by waiting until being advised by their trust account

(Regions) on June 7, 2024 that the check had cleared. Only then did the Insured wire the funds on that date to Imposter Casteel per his instructions.

## CAUSES OF ACTION

### I.

### BREACH OF CONTRACT

30. Plaintiff incorporates paragraphs 1-29 of this complaint as if fully stated herein in support of this fraud claim together with all exhibits attached to this complaint. Plaintiff has satisfied all five (5) requirements for social engineering coverage as described in Exhibit A (the policy).

    a.    Plaintiff was intentionally misled;

    b.    by an email requesting collection of an alleged debt in return for a fee;

    c.    by an email from someone fraudulently representing himself to be "David Casteel" of Brooks Machinery, Inc., seeking representation by Plaintiff to collect a debt allegedly owed to Brooks Machinery, Inc., by Mid-Delta Equipment for a fee;

    d.    which falsely represented that the sender of the email was, in fact, "David Casteel", principal of "Brooks Machinery, Inc.", falsely represented that Mid-Delta Equipment owed Brooks Machinery, Inc., the sum of $158,850.00, and that"Brooks Machinery, Inc." would pay Plaintiff a fee for collection. He further falsely represented that he had spoken with a principal of Mid-Delta Equipment (Eddie A. "Allen" Flowers) who had agreed to pay the debt via Official Check to be made payable to Plaintiff's Escrow Account; He further caused a false Official Check to be sent to Plaintiff, induced Plaintiff to deposit same in Plaintiff's Escrow Account, and, upon 'clearance' of same, to wire funds in the amount of $158,350.00,to an account designated by the imposter. Plaintiff, relying upon these false representations, did in fact wire said funds pursuant to the instructions of the imposter in the amount of $158,350.00 after being advised by Regions

        Bank (the depository bank of the Escrow Account) that the fraudulent Official Check had 'cleared'. This Official Check was subsequently returned to the bank, dishonored as a false check.

  e.      The individual who fabricated this scheme received $158,350.00 from Plaintiff; said individual was an 'imposter', representing himself to Plaintiff to be someone he was not, in order to defraud Plaintiff.

    31.  Cowbell, in all of its capacities of the subject contract by and through its Director of Claims, Mamta Birla in a letter to the Plaintiff (Exhibit G), as producer, joint venturer, and underwriter of the Policy assisted Spinnaker by aiding, abetting and conspiring to breaching its contractual duty owed to Plaintiff under the Policy by denying coverage for this social engineering loss; Spinnaker, by and through its Coverage Counsel Gabriel E Darwick has unreasonably construed the Policy (Exhibit A) to require that the "imposter" and "fraudster" cannot be the same person, despite the fact that the term "imposter" is not defined anywhere in the policy. Darwick takes the position by arguing that such a construction is a reasonable construction in the Policy. (Exhibit I) Darwick then states that such a construction that the imposter cannot be the same person as the real person is a reasonable interpretation of the policy and therefore this reasonable interpretation defeats coverage. The fact that Darwick is forced to resort to a reasonable construction interpretation in the policy is an admission by Cowbell, Cowbell II and Spinnaker that the policy is ambiguous. Darwick has the reasonable interpretation conclusion backwards. It does not support denial of coverage. Under Mississippi law, such an ambiguous statement in the policy will be construed against Cowbell, Cowbell II and Spinnaker and in favor or the Plaintiff for coverage. This is the basis of the Defendant's denial of Plaintiff's lawful claim for coverage under the Policy for this social engineering loss. This is a nonsensical interpretation of the word "imposter", and is a self-serving


and contrived interpretation of the Policy for the sole purpose of avoiding coverage, and renders the Policy language ambiguous. Inasmuch as the insurance contract was proposed, drafted, furnished and submitted by the Defendants, any such ambiguities if established should be construed against the Defendants. Defendants Cowbell and Cowbell II and Defendant Spinnaker are Co-Principals of the Cyber Threats Policy and are joint venturers with respect to the Cyber Threats Policy, and are co-conspirators of the denial of coverage under the Cyber Threats Policy.

32. Spinnaker and Cowbell and Cowbell II have breached their contractual duty owed to Plaintiff under the Policy (Exhibit A) by denying coverage for this social engineering loss and are jointly liable for the breach of contract.

**II.**

**BAD FAITH DENIAL OF CLAIM**

33. Plaintiff incorporates paragraphs 1-32 of this complaint as if fully stated herein in support of this fraud claim together with all exhibits attached to this complaint. Defendants Cowbell and Cowbell II and Defendant Spinnaker are Co-Principals of the Cyber Threats Policy, are joint venturers with respect to the Cyber Threats Policy, and are co-conspirators of the denial of coverage under the Cyber Threats Policy. Neither Cowbell and Cowbell II nor Spinnaker had or have a reasonable or legitimate arguable reason for denying Plaintiff's claim

34. The State of Mississippi recognizes a duty of good faith and fair dealing with respect to conduct controlled by contractual relations. Defendants violated their fiduciary duty to Plaintiff by accepting premiums from Plaintiff to secure coverage under the Policy for social engineering losses, then wrongfully and intentionally denying coverage for this social engineering loss without

a legitimate or arguable reason.

35. By their conduct, Defendants intentionally placed their own respective financial interests before the Plaintiff's financial interests.

36. Defendants have not only breached their contract with Plaintiff but have acted in bad faith by breaching their fiduciary duty to Plaintiff. Defendants Cowbell and Cowbell II and Spinnaker are jointly liable for bad faith denial of coverage and are liable for actual and punitive damages.

### III.

### GROSS NEGLIGENCE

37. Plaintiff incorporates paragraphs 1-36 of this complaint as if fully stated herein in support of this fraud claim together with all exhibits attached to this complaint. Before denying this claim, the Defendant's, at a minimum, must determine whether the policy provision at issue has been voided by a state or federal court, interview its agents and employees to determine if they have knowledge relevant to the claim, and make a reasonable effort to secure all records relevant to the claim. The failure to do so is gross negligence. The Defendants failed to make a proper investigation of the Insured's claim which gives rise to punitive damages for gross negligence.

In their letter of denial dated August 19, 2024, (Exhibit G) the Defendants state:

> If you believe there are additional facts that could alter our analysis, please do not hesitate to provide such information to us for further consideration. . . In considering this matter for coverage, we reviewed the Policy and the information available to date.

38. Under the applicable law of Mississippi, this evidence creates questions of fact regarding

14

the adequacy of the Defendants' investigation of the Insured's claim and that the jury will conclude that such a failure is evidence of gross negligence, entitling the Insured to an award of punitive damages.

39 (a). Had the Defendants conducted a proper investigation, the Defendants would have discovered that David Casteel was an imposter.

39 (b) Had the Defendants conducted a proper investigation, the Defendants would have discovered that Brooks Machinery, Inc. was an imposter.

39 (c) Had the Defendants conducted a proper investigation, the Defendants would have discovered that Eddie A. Foster, Jr. was an imposter.

39 (d) Had the Defendants conducted a proper investigation, the Defendants would have discovered that JH & N Venture was an imposter.

39 (e) The policy contained in Exhibit A defines "Social Engineering Incident" as follows:

> c. **Social Engineering Incident** means the intentional misleading of an **Insured** to transfer **Money** to a person, place or account beyond the **Named Insured's** control resulting directly from the Named Insured's employee's good faith reliance upon an instruction transmitted via email, purporting to be from:
>
> ii. an employee of the **Named Insured**;
>
> but which contained a fraudulent and material misrepresentation and was sent by an imposter. . .

39 (f) If Eddie A. Flowers, Jr. (Allen Flowers) allegedly from Mid-Delta Equipment, LLC, in Greenwood, Mississippi who sent the Official Check to the Insured is an imposter, then coverage exists under said policy.

40. Defendants Cowbell and Cowbell II and Defendant are Co-Principals of the Cyber Threats Policy, are joint venturers with respect to the Cyber Threats Policy, and are co-conspirators of the denial of coverage under the Cyber Threats Policy. Defendants Cowbell and Cowbell II and Spinnaker are jointly liable for gross negligence in the denial of the claim of Cyber Threats under the policy, and are liable and responsible for actual and punitive damages.

## IV.

## POST CLAIM UNDERWRITING

41. Plaintiff incorporates by reference parts 1 through 40 of the complaint and the facts and allegations set forth therein. The Insured was assured by the Defendants that they would be covered by the type of scam that is the subject of this lawsuit. The Insured paid all of their premiums and operated under the belief that they were insured against this specific risk, only to learn later that they were not insured. After the Insured submitted this claim, the Defendants engaged in post claim underwriting by stating that the Insured was not insured against this specific risk. The Defendants wrongfully and intentionally alleged that the Imposter Casteel was not an imposter but rather that the Insured was dealing with the actual David Casteel. This supports the Insured's claim for punitive damages.

42. Defendant Cowbell and Defendant Cowbell II are Co-Principals of the Cyber Threats Policy, are joint venturers with respect to the Cyber Threats Policy, and are co-conspirators of the denial of coverage under the Cyber Threats Policy. Defendants Cowbell and Cowbell II and Spinnaker are jointly liable for post-claim underwriting and for actual and punitive damages.

V.

FRAUD

43. Plaintiff incorporates paragraphs 1-42 of this complaint as if fully stated herein in support of this fraud claim together with all exhibits attached to this complaint. Defendant Cowbell committed fraud by falsely claiming to the Plaintiffs that they were getting "peace of mind with a Cowbell cyber insurance policy." Defendant Cowbell committed fraud to Plaintiffs by further falsely claiming that they were "a pioneer in cyber insurance, Cowbell innovates to make cyber insurance easy and brings clarity to cyber coverage for organizations like yours." Cowbell claims that Cowbell is the leading provider of cyber insurance for small and medium-sized enterprises (SMEs) and the pioneer of Adaptive Cyber Insurance. This was not what Cyber provided to the plaintiffs. Indeed, Cyber engaged in the fraudulent behavior of "bait and switch." See Exhibit "A" attached to this complaint. All Defendants further committed fraud by failing to properly investigate the claim of the Plaintiff, along with asserting non-sensical interpretations of what an imposter consists of is beyond the language of the policy. Not only did the Defendants act in a fraudulent manner the Defendants acted in reckless disregard, all of which resulted in the denial of the Plaintiff's claim. Defendants Cowbell and Cowbell II and Spinakker are jointly liable for fraud and for actual and punitive damages.

**PRAYER FOR RELIEF**

44. As a proximate result of Defendants' said breaches of contractual obligation and duty

of good faith, along with gross negligence, post-claim underwriting and fraud, Plaintiff has suffered actual damages and is entitled to punitive and exemplary damages as follows:

a. Actual damages of $158,850.00

b. Interest at the highest legal rate on $158,850.00 from and after August 19, 2024 (the date of initial denial), until paid in full;

c. Punitive damages in an amount significant enough to have the effect of deterring Defendants and other insurers similarly situated from engaging in such misconduct in the future.

d. Reasonable attorneys' fees, costs of litigation, and all costs of court.

Respectfully submitted,

CHAPMAN, LEWIS & SWAN, PLLC
501 First Street
Post Office Box 428
Clarksdale, MS 38614
(662) 627-4105 telephone
(662) 627-4171 facsimile
ralph@chapman-lewis-swan.com
dana@chpman-lewis-swan.com

By: */s/Ralph E. Chapman*
Ralph E. Chapman  MSB # 5962

By: */s/ Dana J. Swan*
Dana J. Swan MSB # 8088