IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

GORE, KILPATRICK & DAMBRINO,                       **PLAINTIFF**
PLLC, a Mississippi Professional
Limited Liability Company

V.                              **NO. 4:25-CV-107-DMB-DAS**

SPINNAKER INSURANCE COMPANY,
an Illinois Company; COWBELL CYBER,
INC., a Delaware Corporation; COWBELL
INSURANCE AGENCY LLC, a California
Corporation; and JOHN
DOES I through X                         **DEFENDANTS**

## OPINION AND ORDER

After it was fraudulently induced to transfer funds to someone who used a false identity to engage its firm's legal services, Gore, Kilpatrick & Dambrino, PLLC, sued Spinnaker Insurance Company, Cowbell Cyber, Inc., and Cowbell Insurance Agency LLC for breach of contract, bad faith, gross negligence, post-claim underwriting, and fraud based on the denial of its insurance claim for the loss it suffered. The defendants move to dismiss for failure to state a claim. Because the loss is not covered under the insurance policy; because privity of contract is lacking as to Cowbell Cyber, Inc. and Cowbell Insurance Agency LLC; and because Gore fails to adequately plead its gross negligence, post-claim underwriting, and fraud claims, the motion to dismiss will be granted.

## I
## Procedural History

On August 19, 2025, Gore, Kilpatrick & Dambrino, PLLC ("Gore"), filed an amended complaint in the United States District Court for the Northern District of Mississippi against Spinnaker Insurance Company, Cowbell Cyber, Inc., Cowbell Insurance Agency LLC, and John

Does I through X.[1]  Doc. #15.  Seeking compensatory and punitive damages, Gore asserts claims for breach of contract, bad faith denial of claim, gross negligence, post-claim underwriting, and fraud, all based on allegations that the defendants failed to properly investigate and wrongfully denied its insurance claim for its monetary loss resulting from it being fraudulently induced to transfer funds to someone who used a false identity to engage its firm's legal services.  Doc. #15.

On August 26, 2025, the defendants filed a motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Doc. #20.  Gore responded on September 19,[2] Doc. #25; and the defendants replied on October 10,[3] Doc. #29.

## II
## Standard

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) asserts a "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must present enough facts to state a plausible claim to relief. A plaintiff need not provide exhaustive detail to avoid dismissal, but the pleaded facts must allow a reasonable inference that the plaintiff should prevail." *Mandawala v. Ne. Baptist Hosp.*, 16 F.4th 1144, 1150 (5th Cir. 2021) (internal citation omitted).  In evaluating a motion to dismiss, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Serrano v. Customs & Border Patrol*, 975 F.3d 488, 496 (5th Cir. 2020) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).  The

---

[1] Gore filed its original complaint on July 11, 2025.  Doc. #1.  After the Court ordered it to show cause why the case should not be dismissed for lack of diversity jurisdiction, Doc. #11, Gore amended its complaint to properly allege diversity jurisdiction.

[2] The Court granted Gore's request for an extension to respond to the motion to dismiss.  Doc. #24.

[3] The Court granted the defendants' request for an extension to reply.  Doc. #28.

Court "accept[s] all well-pleaded facts as true and construe[s] the complaint in the light most favorable to the plaintiff." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (quoting *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010)). But the Court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (internal quotation marks omitted).

### III
### Factual Allegations

Because of a client's requirement for it to obtain cyber threats insurance, Gore, Kilpatrick & Dambrino, PLLC, sought cyber threats insurance from Cowbell Cyber Inc. ("Cowbell I"). Doc. #15 at 4. Cowbell I assured Gore that it would provide such coverage and that it was a major supplier of cyber threats coverage. *Id.* On or about August 15, 2023, Spinnaker Insurance Company, through Cowbell I and Cowbell Insurance Agency ("Cowbell II"), issued the insurance policy to Gore with effective dates of August 15, 2023, through August 15, 2024. *Id.* The policy specifies that "this policy is a contract of insurance between you and us;" "[t]he words 'We', 'Us', and 'Our' refer to the Company providing this insurance;" and the "Company" is "Spinnaker Insurance Company." Doc. #19-1[4] at PageID 471. Cowbell II is the underwriter of the policy. Doc. #15 at 4.

The policy includes a "Social Engineering Coverage Endorsement" wherein Spinnaker agreed to "pay for a Social Engineering Loss resulting directly from a "Social Engineering Incident." *Id.* at 4–5 (emphases omitted). The policy specifies:

> **Social Engineering Incident** means the intentional misleading of an **Insured** to transfer **Money** to a person, place or account beyond the **Named Insured's** control resulting directly from the Named Insured's employee's good faith reliance upon an instruction transmitted via email, purporting to be from:

---

[4] The insurance policy was filed as an exhibit to the complaint so its contents are considered part of the complaint. FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

> [i]. a natural person or entity who exchanges, or is under contract to exchange, goods or services with the **Named Insured** for a fee … or
>
> ii. an employee of the **Named Insured**;
>
> but which contained a fraudulent and material misrepresentation and was sent by an imposter.

*Id*. at 5 (emphases in original).

On or about May 23, 2024, an individual representing himself to be David Casteel ("Imposter") contacted Gore for the purpose of securing its services to collect a debt allegedly owed to his company, Brooks Machinery, Inc., by Mid-Delta Equipment LLC, in the amount of $158,850.00. *Id.* However, the Imposter was not David Casteel, he did not represent Brooks Machinery, and there was no debt owed by Mid-Delta Equipment to Brooks Machinery. *Id*. The real David Casteel has never emailed Gore, has never done business with Mid-Delta Equipment, and had no knowledge of the fraudulent transaction between the Imposter and Gore. *Id*. at 10. Gore sent the Imposter a letter of engagement, and the Imposter signed and returned the fee agreement on June 3, 2024. *Id*. All written correspondence with the Imposter was via email. *Id*. at 7.

On June 5, 2024, Gore received correspondence allegedly from Mid-Delta Equipment, enclosing an official check for $158,850.00 in payment of the so-called debt to Brooks Machinery. *Id*. at 5. The Imposter, by phone[5] and by email, advised Gore to deduct its attorneys' fee from the amount deposited, and to wire the remaining balance to him. *Id.*; Doc. #19-5 at 1. Gore wired the sum of $158,425.00 to the account specified by the Imposter, and on June 10, 2024, the official check was returned unpaid. *Id*. at 6–7.

---

[5] Jay Gore, III, and Mary McDaniel both spoke with the Imposter by phone. Doc. #15 at 7. Jay is one of Gore's members. *Id.* at 1. The amended complaint does not specify what McDaniel's position is relative to Gore.

On June 17, 2024, Gore filed a claim under the policy with Cowbell I. *Id*. at 8. On August 19, 2024, Mamta Birla, who is Cowbell I's Director of Claims of the Claims Department, advised Gore that the claim was being denied for lack of coverage, specifying there was no coverage under the Social Engineering Coverage Endorsement because Gore did not suffer a Social Engineering Incident. *Id*. at 8. After Gore disputed the denial of its claim, Spinnaker responded to Gore by again stating that there was no insurance coverage under the Social Engineering Coverage Endorsement. *Id*. at 9–10.

**IV**
**Analysis**

The defendants argue that "Gore's breach of contract cause of action … fails because [its] Loss does not qualify as a Social Engineering Incident under the unambiguous terms of the Spinnaker Policy;" "as to Cowbell I and Cowbell II, Gore's breach of contract cause of action fails as there is no privity of contract between Gore and Cowbell I and Cowbell II;" "Gore's causes of action for bad faith, gross negligence, and post-claims underwriting fail because [its] underlying breach of contract cause of action fails [and it] has not sufficiently pled any allegations that would support such claims;" "[a]s to Cowbell I and Cowbell II, because they are not in privity of contract with Gore, Gore's bad faith cause of action must fail;" "Gore's fraud cause of action should be dismissed because [it] has not pled its fraud cause of action with particularity;" and "Gore's request for punitive damages should be dismissed because the underlying causes of action on which it is predicated fail to state a claim." Doc. #21 at 2.

Gore responds that the Social Engineering Incident provision "is ambiguous and must be interpreted in [its] favor;" although "[p]rivity is not a requirement for a breach of contract of Cowbell I and Cowbell II … privity of contract does exist;" "Birla … denied Gore's claim without making any investigation, thereby giving rise to punitive damages;" its negligence claim should

5

not be dismissed because "there is a duty to conduct a reasonable investigation;" post-claim underwriting is "exactly what [it] alleges in the Amended Complaint;" it pled fraud with particularity; and "[p]unitive damages are appropriate in a bad faith case such as that stated in the Amended Complaint." Doc. #26 at 7, 10, 13, 22, 23, 24.

The defendants reply that none of the causes of action in Gore's complaint state a claim against them, noting that "[t]he dispositive issue … is whether it is reasonable to construe the Social Engineering Endorsement to afford coverage for an entirely fictional transaction." Doc. #29 at 1.

### A. Breach of Contract

Under Mississippi law,[6] "[a] breach-of-contract case has two elements: (1) the existence of a valid and binding contract, and (2) a showing that the defendant party has broken, or breached it." *Maness v. K & A Enters. of Miss. LLC*, 250 So. 3d 402, 414 (Miss. 2018) (internal quotation marks omitted) (quoting *Bus. Commc'ns, Inc. v. Banks*, 90 So. 3d 1221, 1224 (Miss. 2012)). "The interpretation of an insurance policy is a question of law, not one of fact." *Hankins v. Md. Cas. Co./Zurich Am. Ins. Co.*, 101 So. 3d 645, 652 (Miss. 2012) (internal quotation marks omitted) (quoting *Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, 609 (Miss. 2009)).

> [I]f a contract is clear and unambiguous, then it must be interpreted as written. A policy must be considered as a whole, with all relevant clauses together. If a contract contains ambiguous or unclear language, then ambiguities must be resolved in favor of the non-drafting party. Ambiguities exist when a policy can be logically interpreted in two or more ways, where one logical interpretation provides for coverage. However, ambiguities do not exist simply because two parties disagree over the interpretation of a policy.

*Id*. at 653–54 (quoting *Architex Ass'n, Inc. v. Scottsdale Ins. Co.*, 27 So. 3d 1148, 1157 (Miss.

---

[6] The policy does not contain a choice of law clause. In this diversity action, the Court applies the law of the forum state. *84 Lumber Co. v. Cont'l Cas. Co.*, 914 F.3d 329, 333 (5th Cir. 2019). The parties cite Mississippi law in their briefs.

6

2010)). "The burden of proving that coverage exists for a peril under an insurance policy rests with the policyholder." *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 429 (5th Cir. 2007) (quoting *Lunday v. Lititz Mut. Ins. Co.*, 276 So. 2d 696, 698 (Miss. 1973)).

### 1. Coverage

According to the defendants:

> To qualify as a Social Engineering Incident under the Social Engineering Endorsement, the following requirements must be met: (1) the insured must be intentionally misled to transfer money, (2) by an instruction transmitted via email, (3) purporting to be from a natural person or entity who exchanges, or is under contract to exchange, goods or services, with the insured for a fee, (4) which contained a fraudulent and material misrepresentation, and (5) but was sent by an imposter. While elements (1), (2) and (4) may be satisfied, elements (3) and (5) are not.

Doc. #21 at 6–7. The defendants maintain these requirements are not satisfied because "Gore had no contractual relationship with the real David Casteel or Brooks Machinery," so "the email did not 'purport to be from' a legitimate business partner," and "[t]he policy language, read as a whole … does not permit coverage where the fraudster is both the purported counterparty and the imposter." *Id*. at 7.

Gore responds that "the imposter [is] a client for whom value was to be exchanged" because "[t]he Imposter Casteel signed and returned the fee agreement;" and "[n]evertheless … [the] contract provision is ambiguous and must be interpreted in [its] favor … because Cyber I's claims adjuster Mamta Birla, Gabriel E. Darwick, Spinnaker's coverage counsel, and the Defendants['] own Motion to dismiss interpret the provision in two completely different ways." Doc. #26 at 7.

The defendants reply that Gore's "assert[ion] that [Birla] and [Darwick] interpret the Social Engineering Endorsement 'in two completely different ways' … is false" because "both letters make the … point [that] the Policy mandates that the transaction involve three parties: Gore, the

7

imposter, and the client or vendor." Doc. #29 at 2–3.

Under the policy, a Social Engineering Incident occurs when the transfer of money "result[s] directly from the Named Insured's employee's good faith reliance upon an instruction … purporting to be from … a natural person or entity who exchanges, or is under contract to exchange, goods or services with the Named Insured for a fee … but which contained a fraudulent and material misrepresentation and was sent by an imposter." Doc. #19-1 at PageID 499. Gore does not identify which aspects of the Social Engineering Incident provision are ambiguous or offer any explanation for why said provision is ambiguous. The language of the policy clearly states that for a Social Engineering Incident to occur, an imposter must instruct the insured to transfer funds while purporting to be a person who exchanges or is under contract to exchange goods or services with the insured for a fee. Because the Court finds that this language is clear and unambiguous, it will apply the policy language as written to Gore's claim.

Here, the real Casteel is not a person who exchanges or is under contract to exchange goods or services with Gore for a fee, because he is not and has never been Gore's client. Accordingly, that the Imposter purported to be Casteel when he gave the instruction to transfer funds does not bring the conduct within the definition of a Social Engineering Incident. Though Gore characterizes the Imposter as its client because the Imposter signed and returned the fee agreement, the Social Engineering Incident provision cannot be reasonably interpreted to cover the fraudulent transaction alleged in the complaint because the instruction to transfer money cannot have been sent by an *imposter purporting to be* a client if the individual giving the instruction *is* the client.

As to Gore's argument that the Social Engineering Incident provision is ambiguous because Birla's letter, Darwick's letter, and the motion to dismiss describe the provision differently, such differences do not amount to ambiguity as to whether the provision covers the

8

facts alleged here. In Cowbell I's denial letter, Birla stated:

> [I]t is Spinnaker's position that that there was no "fraudulent and material misrepresentation sent by an imposter" to intentionally mislead Insured as Mr. Casteel always had the intent to defraud the firm by obtaining the firm's funds through a fake cashier's check. There was no "imposter" that intercepted the communications between Insured and Mr. Casteel that caused Insured to be misled by a fraudulent and material misrepresentation to transfer Mr. Casteel's funds to the imposter instead. Here, we understand that the Insured's investigation revealed that the entire engagement with Mr. Casteel was a scam[.]

Doc. #15 at 9. Gore's allegation that "[u]nlike Mamta Birla, who concluded there was no imposter, Gabriel E. [D]arwick concluded that David Casteel was an imposter … [and] that the Casteel the imposter and Casteel the real person were one and the same," *id*. at 10, at most, indicates that Birla and Darwick had different understandings of the facts underlying the claim. There is no indication that Birla's letter, Darwick's letter, or the motion to dismiss inconsistently interpreted the policy, or that any of their interpretations would result in coverage for Gore.

Because the facts alleged by Gore are not covered by the unambiguous language of the Social Engineering Endorsement, Gore fails to state a claim for breach of contract against the defendants.

## 2. Privity

The defendants argue that "Gore and Cowbell I/Cowbell II are not in privity[ because] Spinnaker issued the Polic[y] to Gore, not Cowbell I/Cowbell II" and the fact that "Cowbell I is the third-party administrator and Cowbell II is the producer … does not render them a party to the contract." Doc. #21 at 9. Gore responds that "privity is not a requirement" and even so, "privity of contract does exist [because] [it] entered into a contract with Cowbell I[,] [it] is billed yearly by Cowbell I[,] [it] pays its yearly premiums directly to Cowbell I[,] … Cowbell I makes the determination as to whether or not [its] claim is paid[,] … [and] Cowbell II procured the policy." Doc. #26 at 10–11. The defendants reply that "Gore cites no authority to support its unfounded

9

assertion that privity is not required to assert a breach of contract claim;" Gore's "arguments at most suggest that Cowbell [I] was acting as an agent for a disclosed principal;" and "[w]hile an agent for a disclosed principal can incur independent liability when their conduct constitutes gross negligence, malice, or reckless disregard for the rights of an insured, Gore's Amended Complaint fails to offer any specific facts that Cowbell I or Cowbell II were grossly negligent, or acted with malice or reckless disregard for the rights of Gore." Doc. #29 at 5–6.

"Under Mississippi law a party may only recover damages for breach of contract if there is privity of contract between the damaged party and the party sought to be held liable for the breach." *Mortera v. State Farm Fire & Cas. Co.*, 561 F. Supp. 3d 684, 690 (S.D. Miss. 2021) (citing *Burns v. Washington Sav.*, 171 So. 2d 322, 324 (Miss. 1965), and *Bissette v. Univ. of Miss. Med. Ctr.*, 282 So.3d 507, 513 (Miss. Ct. App. 2019)). An agent who is not party to the insurance contract is not liable for payment of contractual benefits. *Jenkins v. Farmington Cas. Co.*, 979 F. Supp. 454, 457 (S.D. Miss. 1997).

Because Cowbell I and Cowbell II are not parties to the insurance contract between Gore and Spinnaker, Gore fails to state a claim for breach of contract against Cowbell I and Cowbell II for this reason as well.

### B. Bad Faith

The defendants argue that "[a] denial of a claim based upon an erroneous interpretation of policy language does not automatically equate to bad faith, if there was an arguable or legitimate basis for the denial," and "Gore's Amended Complaint fails to allege specific facts that Spinnaker acted with malice or with gross and reckless disregard to Gore's rights." Doc. #21 at 10. Gore responds that because "this is a Motion to Dismiss … all well-plead[ed] allegations in [its] Complaint must be taken as true," and "the head of the claims department at Cowbell I denied

10

Gore's claim without making any investigation, thereby giving rise to punitive damages." Doc. #26 at 12–13. The defendants reply that Gore cannot recover on its bad faith claims because it "is not entitled to coverage for this loss," and "[e]ven if a fact question existed on coverage … Gore … fails to adequately allege a claim for bad faith." Doc. #29 at 6.

"A party seeking to establish a bad faith claim has a heavy burden of proof." *Harris v. Allstate Vehicle & Prop. Ins. Co.*, 470 F. Supp. 3d 625, 635 (S.D. Miss. 2020) (citing *Jenkins v. Ohio Cas. Ins. Co.*, 794 So. 2d 228, 232 (Miss. 2001)). Bad faith denial of insurance benefits requires that "(1) 'the insurer lacked an arguable or legitimate basis for denying the claim,' and (2) 'the insurer committed a willful or malicious wrong, or acted with gross and reckless disregard for the insured's rights.'" *Id.* (quoting *Jenkins*, 794 So. 2d at 232–33). "Although styled a tort, an action for bad faith breach of contract is created by contract and requires proof of a breach of contract. Where there is no breach of contract, there can be no tortious breach of contract." *Johnson v. Travelers Pers. Ins. Co.*, 747 F. Supp. 3d 941, 949 (S.D. Miss. 2024) (internal citations omitted).

Because Gore fails to state a claim for breach of contract, its bad faith claim also fails.[7]

### C. Gross Negligence

The defendants argue that "Gore's Amended Complaint fails to state a claim for gross negligence as there are no factual allegations to distinguish a claim of gross negligence from a claim for breach of contract;" "the proper cause of action for failure to adequately investigate a claim is breach of contract, not negligence;" and "[t]here are no factual allegations in Gore's Amended Complaint that Defendants engaged in any conduct that evidences a reckless

---

[7] More, even if Gore did not fail to state a claim for breach of contract, it would still fail to state a claim for bad faith because it has not alleged facts to support a finding that the defendants lacked an arguable or legitimate basis for denying its claim, nor that their conduct was willful, malicious, or demonstrated gross and reckless disregard for its rights.

indifference to Gore's rights." Doc. #21 at 13–14. Gore responds that "[u]nder Mississippi law, a plaintiff may make a claim under both breach of contract and negligence," and "there is a duty of care recognized by tort law in Mississippi for failing to investigate a claim." Doc. #26 at 20, 22. The defendants reply that "[n]either Gore's Amended Complaint nor Gore's Response contain any factual allegations that Defendants acted willfully, wantonly, or with reckless disregard to the consequences to Gore;" "[t]he insurer's duty to conduct a proper investigation is not a duty that is independent of the contract itself;" and "Gore has improperly described its breach of contract claim as a negligence claim." Doc. #29 at 9.

"[T]he breach of a contract (whether described as negligent or not) is not actionable in tort under an ordinary negligence theory unless breaching the contract also breached a duty of care recognized by tort law." *Watkins & Eager, PLLC v. Lawrence*, 326 So. 3d 988, 993 n.2 (Miss. 2021) (internal quotation marks omitted) (quoting *Clausell v. Bourque*, 158 So. 3d 384, 391 (Miss. Ct. App. 2015)). However, the negligent performance of a contractual duty may give rise to negligence as well as breach of contract claims.

> [A] duty of care "may sometimes have relation to obligations growing out of, or coincident with, a contract, and frequently the same facts will sustain either class of action." The usual case is that the obligor must use reasonable care in his performance of the contractual duty. "Accompanying every contract is a common law duty to perform with care, skill and reasonable experience, and a negligent failure to observe any of these conditions is a tort as well as a breach of contract."

*Clausell*, 158 So. 3d at 391 (quoting *Hazell Mach. Co. v. Shahan*, 161 So. 2d 618, 624 (Miss. 1964) and *George B. Gilmore Co. v. Garrett*, 582 So. 2d 387, 391 (Miss. 1991)).

Here, Gore's gross negligence claim is based on the allegation that the defendants "failed to make a proper investigation of [its] claim." Doc. #15 at 14. "An adjuster has a duty to investigate all relevant information and must make a realistic evaluation of a claim." *Hardaway v. Howard Indus., Inc.*, 378 So. 3d 946, 953 (Miss. 2024) (internal citations omitted) (quoting *Bass*

12

*v. California Life Ins. Co.*, 581 So. 2d 1087, 1090 (Miss. 1991)). Negligent investigation of an insurance claim may amount to negligence in addition to breach of contract. *See Fid. & Cas. Co. of N.Y. v. Gault*, 196 F.2d 329, 330 (5th Cir. 1952) ("If [the insurer] had undertaken the defense or investigation, and had done it negligently, it would have been liable for all damages directly and proximately caused by its negligence").

> A prima facie case of negligence requires proof that "(1) the defendant had a duty to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) the defendant failed to conform to that required standard; (3) the defendant's breach of duty was a proximate cause of the plaintiff's injury; and (4) the plaintiff was injured as a result."

*United Emergency Servs. of Miss., Inc. v. Miller ex rel. Reed*, 414 So. 3d 66, 71 (Miss. 2025) (quoting *Vaughn v. Miss. Baptist Med. Ctr.*, 20 So. 3d 645, 650 (Miss. 2009)). "[G]ross negligence is that course of conduct which, under the particular circumstances, discloses a reckless indifference to consequences without the exertion of any substantial effort to avoid them." *In re Guardianship of Duckett*, 991 So. 2d 1165, 1176 (Miss. 2008) (internal quotation marks omitted) (quoting *Dame v. Estes*, 101 So. 2d 644, 645 (Miss. 1958)).

Here, the allegations in the complaint do not show that Gore was injured as a result of any negligent investigation because even if the defendants had thoroughly investigated and confirmed all the facts alleged in the complaint, Gore still would not have been covered by the Social Engineering Endorsement. And, because Spinnaker and Cowbell I concluded that the facts alleged in Gore's insurance claim, even if true, did not constitute a Social Engineering Incident, their alleged failure to properly investigate does not rise to the level of recklessness required to state a gross negligence claim.

### D. Post-Claim Underwriting

The defendants argue that Gore's claim that "[they] engaged in post-claim underwriting by simply denying Gore's [insurance] claim … fails to state a valid post-claim underwriting claim

under Mississippi law." Doc. #21 at 14. Gore responds that "[p]ost-claim underwriting occurs when an insured pays premiums and operates under the assumption he is insured against a specific risk, only to learn after he submits a claim that he is not insured," and "[t]hat is exactly what [it] alleges in the Amended Complaint." Doc. #26 at 22–23. The defendants reply that "Gore's policy was underwritten at the time the Policy application was made;" "[t]he denial of a claim, without more, is insufficient to support a post-claim underwriting claim[; and] Gore's formulaic recitation of the elements of a post-claim underwriting claim are simply insufficient." Doc. #29 at 10.

The Mississippi Supreme Court describes the prohibition against post-claims underwriting as:

> An insurer has an obligation to its insureds to do its underwriting at the time a policy application is made, not after a claim is filed. It is patently unfair for a claimant to obtain a policy, pay his premiums and operate under the assumption that he is insured against a specific risk, only to learn *after* he submits a claim that he is *not insured*, and, therefore, cannot obtain any other policy to cover the loss. The insurer … should be estopped from determining whether to accept an insured six months or more after a policy is issued.

*Lewis v. Equity Nat'l Life Ins. Co.*, 637 So. 2d 183, 188–89 (Miss. 1994) (emphases in original). Because Gore does not allege that the policy was underwritten after its claim was filed, it fails to state a claim for post-claim underwriting.

### E. Fraud

The defendants argue that "Gore's allegations fall far short of the particularity required to plead a fraud claim under Mississippi law;" "Gore fails to plead that Defendants made a fraudulent misrepresentation;" and "Gore conflates the breach of contract cause of action with the fraud cause of action." Doc. #21 at 15. Gore responds that "the fraud was the denial of [its] claim by Mamta Birla of Cowbell I by not conducting any investigation, much less a reasonable investigation." Doc. #26 at 23. The defendants reply that "a breach of contract action is the proper cause of action of an insurer's failure to investigate a claim;" "Gore's Amended Complaint falls far short of

14

pleading fraud with particularity;" and "Gore's Response offers no additional support."  Doc. #29 at 11.  The elements of fraud under Mississippi Law are:

> (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the person and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.

*Riverboat Corp. of Miss. v. Davis*, 341 So. 3d 77, 82 (Miss. 2022) (quoting *Stringfellow v. Stringfellow*, 451 So. 2d 219, 221 (Miss. 1984)).  The circumstances constituting fraud must be alleged with particularity.  FED. R. CIV. P. 9(b).

In its complaint, Gore alleges that "Cowbell [I] committed fraud" by falsely claiming to the Plaintiffs that they were getting 'peace of mind with a Cowbell cyber insurance policy' … [and] by further falsely claiming that they were 'a pioneer in cyber insurance, Cowbell innovates to make cyber insurance easy and brings clarity to cyber coverage for organizations like yours[;]' [and] Cowbell [I] claims that [it] is the leading provider of cyber insurance for small and medium-sized enterprises (SMEs) and the pioneer of Adaptive Cyber Insurance[, but t]his was not what [it] provided to the plaintiffs."  Doc. #15 at 16–17.  Gore further alleges that "[a]ll Defendants further committed fraud by failing to properly investigate [its] claim … along with asserting non-sensical interpretations of what an imposter consists of."  *Id*. at 17.  These statements fail to allege the elements of fraud at all, much less to allege the circumstances of fraud with particularity.  Specifically, the complaint contains no allegations that any of the alleged false statements were material, that the defendants made them with knowledge of their falsity and intent that they be relied upon, that Gore relied on them and had the right to do so, or that Gore was consequently and proximately injured as a result of such reliance.  And, in the case of failure to investigate, Gore also does not allege that any false statement was made.

15

**V**
**Conclusion**

The motion to dismiss [20] is **GRANTED**.  Gore's claims are **DISMISSED without prejudice**.

**SO ORDERED**, this 31st day of March, 2026.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

16